Dana LeBLANC, Appellant,

v.

**LAMAR STATE COLLEGE and Barbara Peveto, Individually and as Representative of Lamar State College, Appellees.**

No. 09–06–340 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 8, 2007.

Decided July 26, 2007.

Linda Switzer, Switzer & Associates, PLLC, Seabrook, for appellant.

Greg Abbott, Atty. Gen., Linda A. Halpern, Asst. Atty. Gen., Austin, for appellant.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

In this appeal, we consider whether the defendants established as a matter of law that they were entitled to summary judgment on the plaintiff's disability-based causes of action. Because we find the trial court properly granted summary judgment to the defendants, we affirm.

Dana LeBlanc sued Lamar State College–Orange and Barbara Peveto, her su-

pervisor, for unlawful employment practices. LeBlanc claimed that Lamar and Peveto discriminated against her because of her disability and subjected her to a hostile work environment.

LeBlanc raises three issues on appeal. In the first, she asserts the trial court erred in denying her motion for partial summary judgment. In issues two and three, she contends the trial court erred in granting the defendants' motion for summary judgment.

## I. Background

LeBlanc has a hereditary, neurological disorder called Friedreich's ataxia. It is a progressive disease that affects balance and coordination. At the time of LeBlanc's deposition, she was confined to a wheelchair.

LeBlanc began working at Lamar's Learning Resource Center ("Center") in the fall of 1999. The Center provides computer access and tutoring to students in math, English, reading, and various computer software applications. Her immediate supervisor was Peveto, the Center's Coordinator. Lamar also hired Barbara Sarver in a similar position. Both LeBlanc and Sarver were hired on a part-time basis (eighteen hours per week) to assist with tutoring. Funding for their jobs came from a pooled position in Lamar's Business and Technology division. Although they were designated as "adjunct classroom assistants," there were no job descriptions for their positions, which lasted for one semester and were not posted or otherwise filled in accordance with Lamar's requirements for hiring personnel for regular positions. Further, LeBlanc and Sarver (and any individuals in other adjunct positions) were not guaranteed employment beyond the semester for which they were hired. After LeBlanc's and Sarver's initial appointments for the

1999 fall semester expired, LeBlanc and Sarver were reappointed for the part-time positions on a semester-by-semester basis.

During budget preparations for fiscal year 2003, Peveto requested that the two part-time positions held by LeBlanc and Sarver be replaced by one full-time and one part-time position, with both of these new positions to be paid from the Center's funds. Lamar's budget committee subsequently approved only the full-time position, which Lamar classified as a "laboratory technician."

In July 2002, Lamar posted the new full-time position on campus and through the Texas Workforce Commission. Only LeBlanc and Sarver applied. As job candidates, LeBlanc and Sarver took a test that was designed to measure their skills pertinent to the position's responsibilities, and a five-member search committee interviewed them. The committee used the same set of interview questions for both women and assigned each a score based on her application, letter of application, and interview responses. LeBlanc earned 457.5 points in this part of the process, while Sarver earned 665.

Both LeBlanc and Sarver took the same test, which was designed to demonstrate the applicant's skills in English, math, and computer science. The test had five parts, with each part worth ten points. The five parts were (1) English skills (correcting a paragraph), (2) math skills (five problems worth two points each), (3) English and computer skills (preparing a memorandum), (4) knowledge of Microsoft Excel, and (5) knowledge of Microsoft Access. LeBlanc scored 37 on this test, while Sarver scored 47. Based on the total scores from the applications, interviews, and test results, the search committee unanimously recommended Sarver for the job.

LeBlanc, who has an associate's degree, subsequently applied for the Center's laboratory manager's position, which required a bachelor's degree. Nineteen individuals applied for the job, but Lamar only interviewed candidates who met the position's minimum qualifications. Lamar hired an individual from outside the College for the laboratory manager position.

LeBlanc sued Lamar and Peveto and claimed that she should have been offered either the lab tech or the lab manager position. The defendants filed a traditional motion for summary judgment on all of LeBlanc's claims and LeBlanc filed a partial motion for summary judgment on her claim of disability-based employment discrimination. *See* TEX.R. CIV. P. 166a(c). The trial court granted the defendants' motion for summary judgment and denied LeBlanc's motion for partial summary judgment.

## II. Standard of Review

■■■■ "When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered. The reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *Texas Workers' Comp. Comm'n v. Patient Advocates of Texas*, 136 S.W.3d 643, 648 (Tex.2004) (citations omitted). To prevail on a summary judgment motion brought under Rule 166a(c), a movant must show that there is no genuine issue as to any material fact and that it is

entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Little v. Texas Dep't of Criminal Justice*, 148 S.W.3d 374, 381(Tex.2004). A defendant "who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim." *IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002)). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See* TEX.R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Roberts v. Clark*, 188 S.W.3d 204, 209 (Tex.App.-Tyler 2002, pet. denied). "When reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). If the movant establishes a right to summary judgment, the burden shifts to the nonmovant to raise a material fact issue sufficient to defeat summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

## III. Applicable Statute

LeBlanc sued the defendants under Chapter 21 of the Texas Labor Code (entitled "Employment Discrimination"). *See* TEX. LAB.CODE ANN. §§ 21.001–21.556 (Vernon 2006). Section 21.051 of the Labor Code creates a cause of action against an employer that discriminates against a person "because of" a disability. *Id.* § 21.051.[1]

---

[1]. Section 21.051 provides:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the

One of Chapter 21's purposes is providing "for the execution of the policies" of the federal Americans with Disabilities Act of 1990 ("ADA"). TEX. LAB. CODE ANN. § 21.001(3) (Vernon 2006); *see Little,* 148 S.W.3d at 381–82; *see also* 42 U.S.C.A. §§ 12101–12213 (2005). Thus, when reviewing a trial court's decisions in disability-based employment discrimination cases, we may consider federal cases as precedent. *See Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex.2001); *see also Little,* 148 S.W.3d at 382 (noting that federal decisions guide Texas courts in interpreting chapter 21's definition of disability).

## IV. Disability–Based Employment Discrimination

We first consider whether the trial court erred in granting summary judgment to the defendants on LeBlanc's employment-discrimination claim. To prevail on a disability discrimination claim, a plaintiff must show that (1) she has a "disability," (2) she is "qualified" for the job she seeks, and (3) she suffered an adverse employment decision because of her disability. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir.1996); *Davis v. City of Grapevine,* 188 S.W.3d 748, 757 (Tex.App.-Fort Worth, 2006, pet. denied). Employers are liable only for discrimination that occurs "because of or on the basis of a physical or mental condition that *does not impair* an individual's ability to reasonably perform a job." TEX. LAB.CODE ANN. § 21.105 (Vernon 2006) (emphasis added); *see Austin State Hosp.*

> terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.
> TEX. LAB.CODE ANN. § 21.051 (Vernon 2006).

*v. Kitchen,* 903 S.W.2d 83, 88 (Tex.App.-Austin 1995, no writ). Further, section 21.128 declares:

> It is an unlawful employment practice for a respondent covered under this chapter to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an *otherwise qualified individual* with a disability who is an employee or applicant for employment, unless the respondent demonstrates that the accommodation would impose an undue hardship on the operation of the business of the respondent.

TEX. LAB.CODE ANN. § 21.128(a) (Vernon 2006) (emphasis added).

In moving for summary judgment on LeBlanc's employment-discrimination claim, the defendants asserted that LeBlanc was not a "qualified individual" as a matter of law. A qualified, disabled person is one " 'with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires.' " *Turco,* 101 F.3d at 1092 (quoting 42 U.S.C. § 12111(8)). However, an employer's duty to make a "reasonable workplace accommodation" does not arise unless the disabled employee or applicant is an "otherwise qualified individual." TEX. LAB.CODE ANN. § 21.128(a).[2] "[A]n otherwise qualified person is 'one who is able to meet all of the program's requirements in spite of [her] handicap.' " *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999) (quoting *Turco,* 101 F.3d at 1093).

**2.** The ADA similarly provides that discrimination occurs if an employer does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee ... [.]" 42 U.S.C.A. § 12112(b)(5)(A) (2005).

If the defendants' evidence established that LeBlanc was not qualified for the positions of lab technician or lab manager, to avoid summary judgment, LeBlanc would have to show that (1) she could perform the job's essential functions despite her disability, or (2) she could perform the job's essential functions if she received a reasonable accommodation for her disability. *See Davis,* 188 S.W.3d at 763; *see also Cornyn v. Speiser, Krause, Madole, Mendelsohn & Jackson,* 966 S.W.2d 645, 648–49 (Tex.App.-San Antonio 1998, pet. denied). Essential functions of a job are those that "bear more than a marginal relationship to the job at issue." *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993).[3] Further, the plaintiff has the burden to request reasonable accommodations; she cannot expect the defendant to have "extra-sensory perception" about accommodations that would allow her to perform the job's essential functions. *See Burch v. City of Nacogdoches,* 174 F.3d at 621; *Burch v. Coca–Cola, Co.,* 119 F.3d 305, 319 (5th Cir.1997).

### A. Laboratory Technician

The defendants' summary judgment evidence established that the laboratory technician's responsibilities included tutoring developmental students (those requiring remedial classes in math and English) as well as computer-science students.[4] In fact, the evidence showed that the Center consistently served more math and English students than computer students.[5] Thus, the ability to tutor math and English students was an essential job function and more than marginally related to the job. *See Chandler,* 2 F.3d at 1393.

LeBlanc's deposition testimony was part of the summary judgment evidence. She acknowledged that she was not qualified to tutor in math and English, that she did not tutor in English, and that other personnel tutored the majority of math students. She further agreed that math was not a strong subject for her. The record reflects that Peveto tutored the math and English students when both she and LeBlanc were present in the Center. LeBlanc conceded that if the lab tech's job were to be a one-person job, that person would need to be able to tutor in everything, which she admittedly could not do.

Additional summary judgment evidence included LeBlanc's test scores and interview-application results. Leblanc's overall

---

**3.** Non-exclusive factors that assist in determining whether a job function is essential include: (1) the employer's judgment about whether the function is an essential one, (2) written job descriptions, (3) the amount of time that the employee spends performing the function, (4) the consequences of allowing the employee not to perform the function, and (5) work experience of persons holding the position. *See Ketcher v. Wal–Mart Stores, Inc.,* 122 F.Supp.2d 747, 752 (S.D.Tex.2000).

**4.** The posted notice described the responsibilities for the position:

Responsibilities include tutoring, counseling, and directing the educational efforts of developmental students to help remove any deficiencies; provide students with a laboratory setting to complete assignments using computers; supervise lab student assistants and tutors; develop educational strategies needed for remediation of English, math and reading; review materials and software in an effort to maintain current state-of-the-art technology and educational methods; and perform related duties and tasks as assigned.

**5.** Records for the 1999–2001 fall semesters show that the Center assisted 283 computer students compared with 537 math and English students. Records for the 1999–2001 spring semesters likewise showed more math and English students (347) used the Center than did computer students (224).

test score was significantly lower than Sarver's. For the test's math portion, LeBlanc scored two points out of a possible ten, while Sarver scored ten points. For the interview-application scoring, the committee considered the candidates's applications, letters of application, and interview responses. LeBlanc's scores on this part of the interview-application were likewise significantly lower than Sarver's.

In addition, the defendants offered the affidavit of Barbara Peveto. As LeBlanc's supervisor at the Center, Peveto observed LeBlanc's work for several years. Peveto stated that LeBlanc assisted the computer-science students but left the tutoring of the math and English students to others. When LeBlanc was the only employee on duty, the math and English students did not receive assistance. According to Peveto, if LeBlanc had been selected for the full-time position, there would have been no one to cover her inability to tutor in these two areas. Sarver, according to Peveto, could tutor students in all required subject areas.

We conclude that the defendants' summary judgment evidence showed that LeBlanc was not qualified to perform essential functions of the lab tech position. Because the defendants' evidence negated the qualification element of LeBlanc's cause of action, she had the burden to show she could perform the job despite her disability or to show that she could perform the job if given a reasonable accommodation that she requested. *See Burch*, 174 F.3d at 621; *Siegler*, 899 S.W.2d at 197; *Davis*, 188 S.W.3d at 763.

Therefore, we turn to LeBlanc's summary judgment evidence and her argument that she was qualified for the job. LeBlanc identifies certain evidence to show her qualifications for the lab tech position. She argues that her job-performance evaluations and a social security

evaluation indicate she was performing the essential job functions of her job satisfactorily, with or without accommodation. However, these evaluations relate to her temporary job, one that had not been posted and did not have specific designated responsibilities. LeBlanc admittedly did not tutor math and English while in her temporary position. Thus, we conclude that these evaluations do not raise a genuine issue of material fact regarding whether LeBlanc could perform the responsibilities of the lab tech position, which required math and English tutoring.

LeBlanc also maintains that her affidavit controverted the defendants' assertion that she was not qualified. LeBlanc's post-deposition affidavit asserted that she is "well qualified to perform the essential job duties and tasks of the Technician I position for which [she] had been working [and] which was created from [her] part time position." This is the only statement in her affidavit in which she addresses her qualifications.

LeBlanc's assertions, however, are conclusory. First, without any factual basis, LeBlanc implies that the essential job duties of her former job are the same as the lab tech position for which she applied. Second, she also concludes, without any factual basis, that she is "well qualified" for the new position. Such conclusory statements are insufficient to defeat summary judgment. *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 27 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)); *see* TEX.R. CIV. P. 166a(f). Statements are conclusory if they fail to provide underlying facts to support their conclusions. *1001 McKinney*, 192 S.W.3d at 27 (citing *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ)).

■ Further, LeBlanc does not present any evidence that prior to Lamar's hiring decision she requested a reasonable accommodation that would have assisted her in performing the essential job functions of the lab tech position. She had the burden to make such a request. *See Burch v. City of Nacogdoches*, 174 F.3d at 621; *see also Burch v. Coca–Cola Co.*, 119 F.3d at 319. The concept of "reasonable accommodation" embodies the notion that, with the accommodation, the employee will be qualified to perform the job's essential functions. *See Turco*, 101 F.3d at 1093–94 (finding that plaintiff could avoid summary judgment by showing that a reasonable accommodation of disability would have enabled him to perform essential job functions).

Based on the summary judgment evidence, the only accommodation LeBlanc requested was one dated April 30, 2001. That request was for assistance in the restroom and assistance in getting to and from her vehicle.[6] The record reflects that at the time Lamar made its hiring decision in the summer of 2002, LeBlanc had made no suggestions regarding how the school could accommodate her deficiencies in math and English.

In summary, neither LeBlanc's affidavit nor her evaluations raise a fact issue to demonstrate that she was qualified for the new lab tech position. Further, there is no evidence that she requested reasonable accommodations regarding her inability to perform the job's essential functions. Thus, we conclude that LeBlanc failed to raise a fact issue to defeat the summary judgment on her disability-discrimination claim as it relates to the lab tech position. *See Siegler*, 899 S.W.2d at 197.

### B. Laboratory Manager

■ The defendants further presented summary judgment evidence supporting their contention that LeBlanc was not a qualified person for the laboratory manager's position. The defendants showed that the laboratory manager's duties included supervising the lab tech, whose duties included tutoring in math and English, as described above. Lamar's posted notice for the laboratory manager's position required applicants to have a bachelor's degree. LeBlanc admittedly did not have a bachelor's degree. The defendants' summary judgment evidence reflects that Lamar interviewed only applicants who had the position's required degree. Further, LeBlanc conceded she was not aware of Lamar's interviewing any applicant who did not meet the degree requirement. Thus, we conclude that the defendants' summary judgment evidence negated the "qualified individual" element of LeBlanc's cause of action relating to the laboratory manager's position. *See Mason*, 143 S.W.3d at 798.

Though LeBlanc had the burden to provide evidence establishing a fact issue on whether she was qualified for the lab manager's position, she offered no additional evidence beyond that submitted in support of her claim that she was qualified for the lab tech position. Thus, we find that the defendants established that LeBlanc was not qualified for the lab manager's position and that she failed to raise a fact issue on whether she was qualified for the position. *See Siegler*, 899 S.W.2d at 197.

---

6. Lamar did not grant LeBlanc's request for assistance in the restroom every three hours, which involved lifting her from her wheelchair, but offered instead to arrange her schedule so that she did not have to work more than three hours at a time. LeBlanc refused this proposal. At her deposition, LeBlanc further stated that the only accommodation she did not receive after April 2001 was restroom assistance. Until the time LeBlanc left Lamar, Tony Barrientos and security guards provided assistance to her vehicle.

■ Accordingly, we find that the trial court properly granted summary judgment to the defendants on LeBlanc's first cause of action, disability-based employment discrimination. Once the defendants demonstrated that the employment decision was not disability-based, LeBlanc had the burden to raise a material issue of fact that she was qualified for one of the two jobs available. *See id.* Her summary judgment evidence fails to raise a genuine issue of material fact.

## V. Disability–Based Harassment

We next consider whether the trial court erred in granting summary judgment to the defendants on LeBlanc's second cause of action, disability-based harassment.[7] In her second amended petition, LeBlanc alleged that she suffered harassment from Lamar and Peveto in the following ways: (1) Peveto placed obstacles in front of LeBlanc's wheelchair, (2) Peveto placed documents in drawers above LeBlanc's reach, (3) Lamar refused to offer LeBlanc the full-time position, and (4) Peveto devised a test weighted against LeBlanc's strengths.

The United States Fifth Circuit first recognized disability-based harassment claims as cognizable under the ADA in 2001. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 232, 234–5 (5th Cir.2001) (finding that the ADA "embraces claims of disability-based harassment," relying in part on Title VII, and noting similarities in language and purposes of Title VII and the ADA). Neither party cites a Texas case considering the viability of a disability-based harassment claim under Texas law, nor have we found any. Its recognition, however, by the Fifth Circuit and the express language of the Texas statute serve as authority for our doing so.

*See* TEX. LAB.CODE ANN. § 21.001(3); *Toennies,* 47 S.W.3d at 476; *see also Little,* 148 S.W.3d at 382.

■ As an initial matter, a plaintiff must show that the complained-of conduct is an actionable offense. *See Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 509 (5th Cir.2003). "For workplace abuse to rise to the level of an actionable offense the 'disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Flowers,* 247 F.3d at 236).

■ Further, a plaintiff in a disability-based discrimination case must show that (1) she has "protected group" status; (2) she suffered unwelcome, disability-based harassment that affected a term, condition, or privilege of employment; and (3) her employer knew or should have known about the harassment, but did not take prompt, remedial action. *See Flowers,* 247 F.3d at 235–36. The defendants contend that the "meager facts" LeBlanc described do not state a disability-harassment claim. We agree.

The defendants supported their contention with summary judgment evidence developed primarily from LeBlanc's deposition testimony. In regard to the obstacles that Peveto allegedly placed in the path of LeBlanc's wheelchair, LeBlanc testified that she could recall one time that a chair was in her way. In a follow-up question, defense counsel asked LeBlanc: "Well, I want to be sure that we have exhausted the subject of Ms. Peveto putting furniture in the path of where your wheelchair needed to go. Do you have anything else to tell me about that?" LeBlanc responded, "No." LeBlanc further testified as follows:

---

**7.** Though LeBlanc uses the term "hostile work environment," we consider her claims to be for "disability-based harassment," the term recognized by the Fifth Circuit. *See Flowers v. S. Reg'l Physician Servs. Inc.,* 247 F.3d 229, 232, 234–35 (5th Cir.2001).

[Defense Counsel]: Did you ever ask Ms. Peveto to move something out of your way and she didn't immediately do it?

[LeBlanc]: I don't recall.

[Defense Counsel]: Was there ever an instance where you were moving along in your wheelchair and your path was blocked and Ms. Peveto was there and you called for help and she did not help you?

[LeBlanc]: I don't recall.

LeBlanc's testimony about her other claims similarly failed to show action pervasive or severe enough to create an abusive environment. In regard to Peveto's allegedly placing documents out of LeBlanc's reach, LeBlanc testified that this occurred four or five times during a two-year period.

██ To negate LeBlanc's "weighted test" claim, the defendants presented evidence that forty percent of the test involved only computer skills, LeBlanc's area of strength. Twenty percent involved a combination of computer and English skills, and the remaining forty percent tested math and English skills (twenty percent for each). In addition, as for Lamar's hiring others instead of LeBlanc, we have already found that LeBlanc failed to create an issue of material fact regarding her employment-discrimination claim.

Thus, we fail to see how the design of a test for another job position or how Lamar's hiring decision on another position are relevant to LeBlanc's claims of disability-based harassment occurring when she was a classroom assistant.

The defendants' summary judgment evidence proved that the complained-of actions were not sufficiently pervasive to support a disability-based harassment claim. *See Gowesky*, 321 F.3d at 509; *Flowers*, 247 F.3d at 236. Thus, the burden shifted to LeBlanc to controvert the defendants' showing. *See Siegler*, 899 S.W.2d at 197.

In her response to Lamar's motion for summary judgment, LeBlanc cited no authority supporting her contention that the alleged actions constituted disability-based harassment. Likewise, on appeal, she cites no authority supporting her contentions and in her brief she fails to distinguish *Flowers* and *Gowesky*.

Instead, LeBlanc argues that certain disputed facts preclude summary judgment in the defendants' favor. LeBlanc argues that a dispute exists regarding whether Tony Barrientos led her to believe that Peveto placed obstacles in her path, placed documents out of her reach, and designed a biased test that would prevent her from scoring well.[8]

---

**8.** In her post-deposition affidavit, LeBlanc stated: "Tony Barrientos agreed with me that Ms. Peveto was discriminating against me and weighting the test so that Barbara Sarver would have higher scores than me and [Peveto] could recommend [Sarver] based upon the scores of a discriminatory test." LeBlanc further stated: "I went into work on several *occasions and there would be boxes* obstructing my path. It was my understanding from what I was told that Ms. Peveto placed the objects in my pathway to harass me. To the best of my recollection it was Tony that told me. I understood him to mean that she put them there to obstruct my path. Ms. Peveto also put the tests that I was to administer in a filing cabinet in a drawer that she knew was above my reach. Tony and I both believed she did this intentionally to harass and intimidate me."

In an affidavit presented by defendants, however, Tony Barrientos stated that he never observed Peveto placing obstacles of any kind in the path of LeBlanc's wheelchair and never heard Peveto make any derogatory comment about LeBlanc's disability. Barrientos further stated: "Although Ms. LeBlanc and I had many conversations over the years and considered one another friends, she never complained to me that anyone in the [Center] was

The standard for disability-based harassment, however, is "high." *See Gowesky*, 321 F.3d at 509. Even if we assume that obstacles were placed in her path on occasion, documents were placed out of her reach on occasion, and that the test design for the new job precluded her from scoring well, the instances raised in the summary judgment evidence in support of these complaints are insufficiently "pervasive" to support a disability-based harassment claim, as a matter of law. *See Gowesky*, 321 F.3d at 509; *Flowers*, 247 F.3d at 236. As was the case in *Gowesky*, here also, "[i]t is not difficult to conclude on this slender evidence that no actionable disability-based harassment occurred." *See Gowesky*, 321 F.3d at 510.

We find that the trial court did not err in granting summary judgment to the defendants on LeBlanc's disability-based harassment claim.

### VI. Conclusion

Because the defendants established that they were entitled to summary judgment on both of LeBlanc's claims as a matter of law, the trial court did not err in granting summary judgment to them and denying LeBlanc's motion for partial summary judgment. We overrule LeBlanc's three issues and affirm the trial court's judgment.

AFFIRMED.

---

placing obstacles in her path or that she was upset about the location of files. The first I learned that [LeBlanc] was voicing such complaints was after this lawsuit was filed." He also said that he believed the test taken by LeBlanc and Sarver "fairly assessed the skills required for the position."