

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00343-CV
_____

THF HOUSING MANAGEMENT CORP., APPELLANT

V.

KATHLEEN GIDEON, APPELLEE

On Appeal from the 414th District Court
McLennan County, Texas[1]
Trial Court No. 2017-1061-5, Honorable Vicki L. Menard, Presiding

January 6, 2021

OPINION

Before PIRTLE and PARKER and DOSS, JJ.

Appellant THF Housing Management Corporation ("THF") appeals from a jury verdict in favor of its former employee, appellee Kathleen Gideon, on her claim for employment discrimination. We modify the part of the judgment awarding Gideon compensatory damages and affirm as modified.

---

[1] Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (West 2013). In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

Background

Gideon began working for THF as a property manager for the Costa Esmerelda Apartments in Waco in 2011. Costa Esmerelda is part of a low-income housing tax credit program that provides housing for low-to-moderate income residents. On May 16, 2015, Gideon was injured in a non-work-related accident that caused multiple compound pelvic fractures. Following surgery, a hospital stay, and rehabilitation therapy in a skilled care facility, Gideon returned to work on July 6, 2015, on a part-time basis. Gideon requested the part-time work schedule and accommodation for her use of a wheelchair, as her surgeon had instructed her to avoid putting weight on her right leg until she was fully released upon completion of rehabilitation. THF employee Lucy Weber, Gideon's immediate supervisor, agreed to the accommodations. At that time, Gideon anticipated that she would be released to return to full-time work on August 19.

According to Gideon, when she returned to work on July 6, she found that paperwork from May 16 to July 6 had piled up in her office, uncompleted.[2] She also discovered that the apartment complex's landscaping had been "neglected" and the maintenance employee had not been completing his tasks on the property. On Gideon's recommendation, the maintenance employee was terminated.

---

[2] Gideon testified that while she was out, she told Weber that "she really needed to get someone, who knew how to just do all the paperwork that I did" to work one to three days a week to keep the Waco office running. THF did not provide additional help in Waco, but did permit the part-time worker to work additional hours, which allowed the apartment complex office to stay open for eight hours a day. The part-time employee brought files to Gideon while she was in the rehabilitation unit. Gideon testified that she provided help, but that it was "an impossible task" to "run a property from your hospital bed, when you're on a morphine drip."

Weber, whose office was in Marble Falls, came to Costa Esmerelda on July 22. Weber's usual practice was to visit the property every other month, and her last visit had been in May. Following her July visit, Weber sent Gideon an email on July 24, describing issues on the property that needed to be addressed. Among other things, Weber noted that the maintenance shop and the maintenance employee's apartment unit were in poor condition, the pool was green, and certain landscaping matters, such as irrigating, cleaning beds, and mulching, required immediate attention. In addition, the apartment complex needed to hire a new porter. Weber told Gideon to update her on the progress of these matters. After emailing Gideon the list of issues, Weber did not return to the property until August 24. According to Gideon, she remedied all the issues set out in the email, other than hiring a new porter. She was actively seeking someone to fill that position at the time she was terminated.

Gideon had a follow-up appointment with her surgeon on August 13. The surgeon released her to start putting weight on her leg, but not to walk unassisted. Gideon was ordered to complete physical therapy on a daily basis and to continue restricting her work hours to part-time. According to Gideon, both she and her surgeon anticipated that she would continue her physical therapy and half-time work schedule until mid-September, at which time they expected she would be able to return to work full-time. On August 14, the day after her appointment, Gideon informed Weber that she would not be released to return to full-time work until September 21. Gideon testified that Weber was displeased by this news.

Weber returned to Costa Esmerelda on August 24, 2015. She hand-delivered a letter from THF's lawyer notifying Gideon that her employment was terminated, effective

3

immediately. The letter stated that the "property's performance has not met expectations under [Gideon's] management and it has become necessary to place another manager in that role to increase occupancy rates and make the property perform as needed."

According to Gideon, she "did not see [the termination] coming" and was "devastated" and "humiliated." She worried about losing her income and how she would continue the rehabilitation she needed to walk again. She had trouble sleeping, lost weight, and experienced stomach problems.

Eventually, Gideon filed suit, alleging that THF had discriminated against her because of her disability. The case proceeded to a jury trial in May of 2019. The jury found in favor of Gideon and awarded her $168,556.17 in back pay and $225,000 in compensatory damages. In addition, the trial court ordered that Gideon recover $60,000 in attorney's fees. THF filed this appeal, arguing that the evidence was legally and factually insufficient to support the jury's findings.

Standard of Review

We will sustain a legal sufficiency challenge only if (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of a vital fact. *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57-58 (Tex. 2015) (per curiam). In our review, we credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider

4

the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding.  *Id.* at 822.

In a factual sufficiency review, we consider and weigh all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

When the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge.  *See, e.g., Osterberg v. Pena*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

Analysis

Gideon's lawsuit was brought under Chapter 21 of the Texas Labor Code, which prohibits an employer from discharging or otherwise discriminating against an employee in any way based on the employee's disability.  *See* TEX. LAB. CODE ANN. § 21.051-.100 (West 2015 & West Supp. 2020).  To establish a disability discrimination claim, a plaintiff must show that (1) she has a disability, (2) she is qualified for the job she seeks, and (3) she suffered an adverse employment decision because of her disability.  *LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 299 (Tex. App.—Beaumont 2007, no pet.) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) and *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth 2006, pet. denied)).  The jury

5

found that Gideon was disabled at the time of her termination, and that finding is not challenged on appeal.

<u>Was Gideon qualified for the job?</u>

The jury answered "yes" to the question in the court's charge reading, "Do you believe Kathleen Gideon was a qualified individual for the job in question, the property manager of the Costa Esmerelda Apartments, at the time of her termination?" In its first issue, THF claims that there is legally and/or factually insufficient evidence to support the jury's answer. THF maintains that Gideon did not establish that she was able to physically perform the requirements of her job at any time after her injury on May 16. THF claims that Gideon "has provided no evidence that she was a qualified individual for the job and rather, established affirmatively that she is not a qualified individual for the job."

"In determining whether a plaintiff is a 'qualified individual' with a disability, the court must first determine whether the plaintiff can perform the essential functions of the job [she] holds." *Davis*, 188 S.W.3d at 765 (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)).

THF points to the following testimony from Mark Mayfield, the CEO of THF, regarding the role of the property manager:

> Well, the overall operations of the property itself. You know, when it comes to management, leasing, rent collection, you know, proper peaceful enjoyment of life of the residents that live there. So, you know, addressing tenant issues, tenant complaints, any maintenance type issues, overseeing the maintenance staff that's there; and also, overseeing the overall – just overall positive condition of the property itself.

6

THF also notes Gideon's deposition testimony, in which she described her job responsibilities:

> I think my major duty [initially] was to get the units rented, collect rent, make sure that the property was kept up. At first, it was mostly a construction site, so it gradually became more of a task. [. . .] Inspect units, do make-readies, make sure they were making the – doing the right things in the make-readies. I – when someone came in and applied, I was the one who had to research their application and get all the relative information that needed to be done to send to my supervisor, Lucy Weber, so that they could be approved. I did weekly reports. I did monthly reports.

THF emphasizes Gideon's trial testimony that, upon her return to work, she "could not walk stairs" and was not able to do everything she had previously done, such as going upstairs and downstairs and walking the property.

In response, Gideon observes that the job responsibilities as described by Mayfield and Gideon do not establish that the ability to walk stairs was an essential function of Gideon's job. At trial, Gideon testified that, although she could not walk up and down stairs, she could perform the duties necessary to her job:

> Q: When you were terminated, were you qualified to perform the duties of an Apartment Manager?
> A: I still could not walk stairs.
> Q: Okay.
> A: But, yes, I could do everything else.
> Q: Well, with accommodations –
> A: Yes.
> Q: — you could perform all the duties, correct?
> A: Yes.
> Q: And you could supervise landscapers to the extent they needed to be supervised?

7

A: Yes.

Q: You could supervise the maintenance and make-ready people?

A: Yes.

Q: You could take care of all the leases, and contracts, and supervise your part-time worker?

A: Yes.

This testimony supports the conclusion that Gideon was able to perform the essential functions of the job. Gideon also testified that she had been an apartment manager for many years and had not been subject to any disciplinary action as a THF employee. Additionally, Mike Krupa, the new lead maintenance employee at Costa Esmerelda, testified that Gideon was qualified to perform the work of an apartment manager and that he never saw her in any situation where she was not qualified to perform the work.

Considering the evidence in the light most favorable to the jury's finding, we conclude that more than a scintilla of evidence supported the jury's determination that Gideon was a qualified individual for the job in question. The evidence is therefore legally sufficient. Further, the evidence is not so weak that the finding is clearly wrong and manifestly unjust. Thus, the evidence is factually sufficient. Accordingly, we overrule THF's first issue.

Was Gideon terminated because of her disability?

The third question of the court's charge read:

Was disability a motivating factor in THF's decision to terminate Kathleen Gideon's employment with THF?

8

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

If you do not believe the reason THF has given for terminating Kathleen Gideon's employment, you may, but are not required to, infer that THF was motivated by Kathleen Gideon's disability.

The jury answered "yes."

In its second issue, THF contends that there is legally and/or factually insufficient evidence to support the jury's finding that Gideon's disability was a motivating factor in THF's termination of Gideon, because the disability impaired her ability to perform the job in question, even with a reasonable accommodation. In its third issue, THF asserts there is legally and/or factually insufficient evidence that THF's stated reason for terminating Gideon was a mere pretext for unlawful disability discrimination. In its fourth issue, THF claims that, in the alternative, there is legally and/or factually insufficient evidence to show that THF would not have terminated Gideon when it did absent the disability motivating factor. We consider THF's third and fourth issues subsumed by its second issue; therefore, we will consider all three issues together.[3]

Because this discrimination case has been fully tried on its merits, we do not engage in the burden-shifting analysis established by the United States Supreme Court in discrimination cases. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). Rather, we consider whether the evidence

---

[3] The court's charge did not include separate questions on whether (1) THF's stated reason for Gideon's termination was a mere pretext or (2) THF would have terminated Gideon when it did absent the disability motivating factor.

9

is legally sufficient to support the jury's ultimate finding. *Id.* At trial, Gideon had the burden to prove that disability discrimination was a motivating factor in THF's decision to terminate her. *Id.*; *see Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) (holding that "a motivating factor" is plaintiff's standard of causation in unlawful employment practice claim).

THF maintains that Gideon was discharged because of her inability to perform the property manager position, even with a reasonable accommodation. However, as set forth above, the jury heard evidence that, at the time she was terminated, Gideon was able to perform the essential duties of the apartment manager position, with the accommodations of using a wheelchair and working part-time.

Moreover, the reason for termination expressed in THF's letter was that the "property's performance has not met expectations under [Gideon's] management and it has become necessary to place another manager in that role to increase occupancy rates and make the property perform as needed." The evidence at trial showed that the performance issues with the property that THF complained about to Gideon were the issues outlined in Weber's July email. Those problems, which arose while Gideon was on leave due to her injury, were remedied after Gideon returned to work. Neither Weber nor Mayfield returned to Costa Esmerelda to follow up on those issues before making the decision to terminate Gideon. The jury also heard evidence that the occupancy rate and lease rate for Costa Esmerelda were high under Gideon's management, dropped slightly while she was on leave, and rose again when she returned to work. Mayfield acknowledged that Costa Esmerelda's lease rate was 100 percent as of July 31, 2015, which was "the ultimate goal." Although THF sought to prove that the property's

10

performance improved after Gideon was replaced as manager, Weber testified at trial, "You know, I can't tell you exactly if it did or not." And while Mayfield testified that the property's operating income increased after Gideon's departure, he admitted on cross-examination that rent was also raised at that time.

Thus, while the jury heard evidence that THF terminated Gideon due to the property's poor performance, it also heard evidence indicating that this proffered reason was not credible. We bear in mind that it is the jury alone that judges the credibility of witnesses and the weight to give their testimony. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 774.

The jury was instructed that, if they did not believe the reason given by THF for terminating Gideon's employment, they were permitted, but not required, to "infer that THF was motivated by Kathleen Gideon's disability." Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was legally and factually sufficient for the jury to determine that Gideon's disability was a motivating factor in THF's decision to terminate her. *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (discrimination need not be sole reason for adverse employment decision so long as it actually plays a role in employer's decision-making process and has determinative influence on outcome). Therefore, we overrule THF's second, third, and fourth issues.

<u>Was Gideon a prevailing party entitled to attorney's fees?</u>

In another argument under its fourth issue, THF contends that Gideon was not a "prevailing party" and therefore not entitled to recover attorney's fees. *See* TEX. LABOR CODE ANN. § 21.259 (West 2015).

After trial, counsel for Gideon filed an application for attorney's fees, in which he requested fees based on a reasonable hourly rate and the time he devoted to the case. THF filed an opposition to Gideon's application, arguing that the fees sought by Gideon's counsel "are excessive and should be reduced." THF's pleading raised objections to the amount of attorney's fees sought, but not to Gideon's entitlement to attorney's fees. We see no indication in the record, and THF directs us to none, showing that THF raised its "prevailing party" argument before the trial court. THF has failed to preserve this issue for our review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a). If a party fails to do this, error is not preserved and the complaint is waived. *See Haryanto v. Saeed*, 860 S.W.2d 913, 921 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (op. on reh'g) (objection at trial which is not the same as objection urged on appeal presents nothing for review). Because THF failed to preserve its complaint that Gideon was not entitled to attorney's fees because she was not a prevailing party, we overrule this issue.

Even if THF had preserved this complaint for our review, we would overrule it, because Gideon clearly prevailed at trial. Gideon obtained a jury verdict finding that she was unlawfully discriminated against, which we have held is supported by the evidence, and she received awards of back pay and compensatory damages.

<u>Did Gideon establish entitlement to compensatory damages?</u>

In its fifth issue, THF argues that there is legally and/or factually insufficient evidence to support the jury's award of $225,000 in compensatory damages. As set forth in the charge, the jury was asked, "What sum of money, if paid now in cash, would fairly and reasonably compensate Kathleen Gideon for her damages, if any, that resulted from [THF's] conduct?" In part 2 of the question,[4] the jury awarded $225,000 for "[c]ompensatory damages in the past, which include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-economic losses." Thus, the jury could consider five separate elements but provided just one total amount.

To successfully challenge a multi-element damage award on appeal, a party must address all the elements of damages and show that the evidence is insufficient to support the entire damage award based on all of the component elements. *City of Houston v. Levingston*, 221 S.W.3d 204, 230 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (op. on reh'g) (citing *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.)). Failure to do so results in a waiver of the sufficiency challenge. *Id.*

---

[4] In part 1 of the question, the jury awarded Gideon $168,556.71 in back pay and employment benefits. THF does not challenge this award of damages on appeal.

13

On appeal, THF specifically challenges the evidence regarding Gideon's mental anguish. THF cites to just one case, which addresses the standard for compensable mental anguish damages, in its argument. THF does not provide any substantive analysis, record references, or legal authority to support its claims regarding the other elements of the compensatory damages award, namely emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-economic losses. Instead, THF makes general statements that Gideon "did not testify to facts that support an award of any compensatory damages" and that the "record is devoid of evidence of any disruption in Gideon's daily routine or similar testimony describing her damages."

THF has arguably waived appellate review of its sufficiency challenge to compensatory damages, because it specifically addresses the legal sufficiency of only one element of the jury's award of compensatory damages, i.e., mental anguish damages. *Id.* ("[T]o challenge a multi-element damage award on appeal successfully, a party must address all of the elements of damages and show that the evidence is insufficient to support the entire damage award."); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (point may not be preserved due to inadequate briefing). In an abundance of caution, however, we will address the merits of the issue.

The record reflects that Gideon testified that, among other things, she had trouble sleeping, suffered stomach problems, and lost weight as a result of her termination. She had loved her job, and being fired made her feel betrayed, devastated, and humiliated. She worried about how, having lost her income, she would continue the rehabilitation therapy she needed to walk again. Gideon obtained unemployment benefits, but they

14

were not enough to cover the extra cost of her continuation of health coverage (COBRA) payments. Gideon testified that, when she told her children that she had been terminated, they said they would do whatever they could to help her, but it was "real hard" on her, because as their mother, she felt that she should be taking care of them, not the other way around. Gideon had intended to continue working and building a nest egg at least until her retirement age of 66, when she could start drawing full Social Security benefits, but that plan became impossible after her termination. Although she immediately started looking for another job, she could not find work and remained unemployed at the time of trial. She had to start receiving her Social Security retirement benefits early, at age 62, to support herself.

The jury was free to consider this as evidence of the inconvenience, loss of enjoyment of life, or emotional pain and suffering experienced by Gideon in making its compensatory damages award. Thus, there is more than a scintilla of evidence to support a finding of damage as to at least one element of the jury's damages award. *See, e.g., Tex. Dep't of Transp. v. Flores*, 576 S.W.3d 782, 801 (Tex. App.—El Paso 2019, pet. filed) (in age discrimination case, evidence supported $100,000 compensatory damages award where terminated employee lost pride and dignity and felt years of service were thrown down the drain). Moreover, we conclude that the evidence supporting the award of compensatory damages was not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.

We overrule THF's fifth issue.

Are Gideon's compensatory damages limited by statute?

In its final issue, THF contends, in the alternative, that the award of compensatory damages is capped at $50,000 pursuant to the Texas Labor Code, because THF had fewer than 100 employees when Gideon made her complaint. *See* TEX. LABOR CODE ANN. § 21.2585(d)(1) (West 2015) ("sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . may not exceed, for each complainant: . . . $50,000 in the case of a respondent that has fewer than 101 employees . . . .").

It was THF's burden to establish its entitlement to this cap. *See River Oaks L-M, Inc. v. Vinton-Duarte*, 469 S.W.3d 213, 238 (Tex. App.—Houston [14th Dist.] 2015, no pet.). At trial, THF did not plead that the cap applied or seek a finding on the issue. However, although THF failed to raise the issue at trial, it claimed entitlement to the damages cap in its verified motion for new trial, thus preserving the issue for our review. *See Zorilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 157-58 (Tex. 2015) (defendant who first raised entitlement to exemplary damages cap in motion for new trial did not waive cap).

In *Zorilla*, the Texas Supreme Court determined that, because the exemplary damages cap in section 41.008(b) of the Civil Practice and Remedies Code "automatically applies and its scope is delineated by statute, there is little concern that plaintiffs will be genuinely surprised by its application in any given case." *Id.* at 157. The Supreme Court

16

noted that the damages cap "does not require proof of any additional fact to establish its applicability; moreover, there is no defense to it." *Id.*

Unlike the exemplary damages cap set forth in section 41.008 of the Civil Practice and Remedies Code, the compensatory damages cap in section 21.2585 of the Labor Code does require proof of additional facts to establish its applicability. The amount of the compensatory damages cap is tiered based on the size of the employer, ranging from $50,000 for respondents with fewer than 101 employees up to $300,000 for respondents with more than 500 employees. TEX. LABOR CODE ANN. § 21.2585(d). Because THF did not obtain a finding on the number of employees it had, we must examine the record to determine whether THF conclusively established it had fewer than 101 employees at the time Gideon filed her complaint. *River Oaks L-M*, 469 S.W.3d at 238; *see also* TEX. R. CIV. P. 279 (issue is waived if no element is submitted or requested and it is not conclusively established by the evidence).

The limited evidence on this issue included testimony from Mayfield, who was asked whether THF provided coverage under the Family and Medical Leave Act ("FMLA") from the period of January 2011 through August of 2015. Mayfield answered, "At that time, no, we were not. We did not meet the threshold to where it was a requirement." When asked why THF did not meet the FMLA threshold, he replied, "I think you had 50 employees – and we were not – we were still under that number." In addition, THF points to the intake questionnaire Gideon filed with the Equal Employment Opportunity Commission, in which she checked the box indicating that her employer had 15-100 employees.

17

Mayfield's testimony that THF had fewer than 50 employees was uncontroverted. Additionally, Gideon represented to the EEOC that THF had between 15-100 employees. We therefore conclude that the trial evidence conclusively established that THF had fewer than 101 employees. Accordingly, any damages award for compensatory damages in this case is limited to $50,000 pursuant to section 21.2585 of the Labor Code. We sustain THF's final issue. In conformance herewith, we modify the trial court's judgment to reflect an award of damages to Gideon in the amount of $218,556.71: $168,556.71 in back pay and employment benefits, which is not subject to the damages cap, and $50,000 in compensatory damages, pursuant to the applicable damages cap. *See* TEX. LABOR CODE ANN. § 21.2585(d)(1).

## Conclusion

We have sustained THF's final issue regarding application of the compensatory damages cap. We thus modify that part of the judgment awarding Gideon damages to reflect damages in the amount of $218,556.71: $168,556.71 in back pay and employment benefits and $50,000 in compensatory damages.

Having overruled THF's other issues, we affirm the judgment as so modified. *See* TEX. R. APP. P. 43.2(b).

Judy C. Parker
Justice

18