**Opinion issued December 31, 2024**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-23-00221-CV

—————————————

**JONATHAN JOHNSON, Appellant**

**V.**

**CAPSTONE LOGISTICS, LLC, Appellee**

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2019-79901**

---

## MEMORANDUM OPINION[1]

---

[1] Appellant Jonathan Johnson filed a motion for rehearing and a motion for rehearing en banc of this Court's August 15, 2024 opinion and judgment. We deny the motion for rehearing, withdraw our August 15, 2024 opinion and judgment, and issue this opinion and judgment in their place. Our disposition remains the same. We deny appellant's motion for rehearing en banc as moot. *In re Wagner*, 560 S.W.3d 311, 312 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding [mand. denied])

In this employment discrimination case, appellant Jonathan Johnson appeals from the trial court's grant of appellee Capstone Logistics, LLC's (Capstone) traditional and no-evidence motions for summary judgment. In three issues, Johnson challenges the trial court's grant of summary judgment as to his disability discrimination, harassment,[2] and retaliation claims. We affirm.

## Background

Johnson began working for Capstone in January 2018 as a warehouse shift supervisor. Johnson contends that while working on May 15, 2018, he began experiencing severe dizziness and a headache. He proceeded to the emergency room, where the physician advised him that his blood pressure was extremely high and that he was at risk for a stroke. After medication and monitoring, the physician released Johnson with instructions to follow up with his primary care physician. He advised Johnson not to return to work until his primary doctor made an assessment.

That same day, Johnson advised his manager, Jeff Javorsky, of the physician's instructions and requested time off. Johnson's primary doctor referred him to a

---

("Because we issue a new opinion in connection with the denial of rehearing, the motion for en banc reconsideration is rendered moot.").

[2] In the "Issues Presented" section of his principal brief, Johnson characterizes his second issue as challenging the trial court's grant of summary judgment as to his age discrimination claim. However, the subsequent discussion concerns Johnson's disability-based harassment claim, and the phrase "age discrimination" does not appear again in his briefing. Therefore, we construe Johnson's second issue as challenging the trial court's determination regarding the disability-based harassment claim.

cardiologist, whom he saw a few days later. Ultimately, Johnson's cardiologist released him to return to work on May 24, 2018.

According to Johnson, when he returned to work, his coworkers advised him that during a pre-shift meeting, a shift lead, Brian Polone, stated that "he planned to do whatever he had to do to make Mr. Johnson's blood pressure go up so high that he'd leave and not return." Johnson contends he reported this to Javorsky, who did nothing.

When Johnson continued to experience dizziness and headaches, he returned to his primary doctor on June 7, 2018, and his primary care doctor kept him off work until he could see his cardiologist on June 11, 2018. Johnson alleges that after providing his June 7, 2018 doctor's note to Javorsky, Javorsky "told Mr. Johnson that he needed to figure out how his shifts were going to be covered," that he "was tired of dealing with his issues," and "abruptly hung up on Mr. Johnson."

Johnson returned to work on June 11, 2018. He claims that on June 13, 2018, he reported dizziness and headache to Javorsky "following a heated verbal confrontation with Mr. Johnson's subordinate employee and shift lead, Kenneth Malveaux." According to Johnson, Malveaux began "yelling," "cursing," and "shouting" at him when he needed to leave a loud work area to speak with a client. However, Johnson completed his shift that day.

On June 14, 2018, Johnson experienced "extremely high" blood pressure and continued to experience severe dizziness and headache. He reported these concerns to Javorsky and requested off work. The following day, Johnson notified Javorsky that he was feeling better and would report to work that day. According to Johnson, in response, Javorsky "told Mr. Johnson to stay home and that he was being suspended for his medical absences." Javorsky advised Johnson to call in to the office the following Monday.

Johnson contends that, on June 15, 2018, he made complaints to Capstone's human resources department concerning Javorsky's comments. Specifically, Johnson alleges that he reported Javorsky's "adverse comments and actions regarding his medical condition, disability, and age" as well as "Javorsky's complaints about [Johnson's] request to accommodate his medical condition and his suspension for absences related to his medical condition." Johnson also reported the shift lead's comments about his intent to increase Johnson's blood pressure, his report of that comment to Javorsky, and Javorsky's inaction. Johnson outlined these complaints in an e-mail titled "Statement" that he sent to human resources on June 15, 2018.

On June 18, 2018, Johnson called Javorsky as instructed. According to Johnson, Javorsky advised Johnson that he had been terminated for missing too much work. Immediately thereafter, Johnson contacted human resources and spoke

4

with Patricia Boyd, who confirmed Johnson was terminated for excessive absences. Johnson pointed out that his absences were due to his medical condition, which he had previously reported to his supervisor and human resources. Johnson also noted his prior complaints of "harassment, discrimination, and retaliation" by Javorsky, which he contended were the result of his request for accommodation for his medical condition. At that time, Johnson requested a transfer to another facility, but Boyd advised that she needed to investigate such an option.

Johnson claims that Boyd compared attendance and medical records submitted by Javorsky with Johnson's records. She reinstated his employment and requested that he provide further documentation from his medical provider. After doing so, Johnson applied for leave under the Family and Medical Leave Act (FMLA). Since Johnson had only worked at Capstone for six months and did not meet the twelve-month service requirement for leave under FMLA, Capstone approved Johnson for a paid medical leave of absence under its Leave of Absence policy, starting on June 28, 2018. On July 19, 2018, Johnson's physician signed a fit-for-duty release, permitting Johnson to return to work without any limitations or restrictions.

Johnson returned to work on or around July 20, 2018—more than three weeks after Capstone granted him medical leave. Upon his return, Johnson followed up with Boyd regarding a possible transfer. Boyd instructed him to ask Javorsky, who

5

denied the request. Johnson alleges that, thereafter, Javorsky began excluding him from pre-shift meetings, which Johnson previously conducted as part of his duties as a shift supervisor. Javorsky purportedly told Johnson not to attend these meetings and then directed Malveaux, Johnson's subordinate, to conduct the meetings.

Meanwhile, Johnson continued to miss work and leave early for various reasons, including reasons unrelated to his high blood pressure. On August 23, 2018, Javorsky advised Johnson that he was fired.

Johnson filed a complaint with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a right-to-sue letter on September 4, 2019.[3] Johnson filed the instant suit against Capstone on November 1, 2019, asserting claims for harassment, discrimination, and retaliation based on age and disability pursuant to the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE §§ 21.051, 21.055, 21.056. Johnson further contended that Capstone harassed, discriminated, and retaliated against him for exercising his rights under the FMLA.[4]

---

[3]     The record does not contain a copy of Johnson's EEOC complaint.

[4]     The record reflects that Capstone removed the case to federal court, but after the federal district court granted summary judgment in Capstone's favor on the FMLA-related claims, the case was remanded to state court for consideration of the remaining state law claims.

Capstone filed an answer to Johnson's suit on December 6, 2019, asserting a general denial and various affirmative defenses. Capstone then filed a combined traditional and no-evidence summary judgment motion on December 22, 2021, as to all of Johnson's claims. The trial court granted Capstone's motion on December 27, 2022, and this appeal followed.

**Standard of Review**

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *See id*.

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine

7

issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented."). To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the

judgment if any of the theories advanced in the motion are meritorious. *Knott*, 128 S.W.3d at 216.

## TCHRA Legal Framework

The TCHRA prohibits employment-based discrimination on account of one's disability. TEX. LAB. CODE § 21.051. Specifically, it provides that an employer commits an unlawful employment practice if, because of an employee's disability, the employer "discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Id*. One of the Legislature's stated purposes for enacting the TCHRA is to facilitate the execution of policies in the Americans with Disabilities Act (ADA). TEX. LAB. CODE § 21.001(3); *see* 42 U.S.C. §§ 12101–12117. Thus, courts analyze claims of disability discrimination and retaliation under the TCHRA by considering state cases as well as analogous federal statutes and the cases interpreting them. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781–82 (Tex. 2018) (noting that Texas jurisprudence parallels federal cases construing and applying equivalent federal statutes in discrimination and retaliation cases under TCHRA); *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("When analyzing a claim brought under the TCHRA, we therefore look to state cases as well as to the analogous federal statutes and the cases interpreting those statutes."); *see also Clark v.*

*Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020) (noting Texas courts follow analogous ADA law in evaluating TCHRA disability discrimination claims).

An employee alleging employment discrimination under the TCHRA can demonstrate an employer's discriminatory intent in two ways: (1) by providing direct evidence of what the employer did and said or (2) by providing circumstantial evidence using the three-part *McDonnell Douglas* burden-shifting framework. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) (addressing allocation of burdens and order of presentation of proof in case under Civil Rights Act of 1964 alleging discriminatory treatment); *see also Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994) (stating "direct evidence of employment discrimination is rare"); *Alamo Heights*, 544 S.W.3d at 782 (stating employees can establish prima facie case of discrimination with circumstantial evidence because "smoking guns are hard to come by").

If an employee chooses to use circumstantial evidence through the *McDonnell Douglas* framework, he must first establish a prima face case for his claims. If the employee establishes a prima facie case of discrimination or retaliation, a rebuttable presumption of discrimination or retaliation arises. *Alamo Heights*, 544 S.W.3d at 782. The employer can defeat this presumption, however, by producing evidence of

10

a legitimate, non-discriminatory reason for the adverse employment action. *Id*.; *see Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) ("If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination."); *Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 175–76 (Tex. App.—El Paso 2021, no pet.) ("[A]n employer's articulated reasons for the adverse termination decision must be sufficiently specific to give the employee the opportunity to present evidence establishing that the reasons were pretextual."). If the employer meets its burden to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to come forward with sufficient evidence to raise a genuine issue of material fact on the question of whether the employer's stated reason is a pretext for discrimination or retaliation. *Alamo Heights*, 544 S.W.3d at 782.

Although intermediate evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, the ultimate burden of persuading the trier-of-fact that the employer intentionally discriminated against the employee always remains with the employee. *Alamo Heights*, 544 S.W.3d at 782; *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

## Disability Discrimination

In his first issue, Johnson argues that the trial court erred in granting Capstone's summary judgment motion as to his disability discrimination claim. Capstone moved for summary judgment on the grounds that (1) Johnson did not present evidence demonstrating that his high blood pressure substantially limited any of his major life activities; and (2) it offered a legitimate, non-discriminatory reason for Johnson's termination. In response, Johnson argues that he presented more than a scintilla of probative evidence raising genuine issues of material fact on each challenged element of his discrimination claim, precluding summary judgment.

### A. Prima Facie Case

Since Johnson did not submit direct evidence of discrimination with his motion for summary judgment, we proceed under the *McDonnell Douglas* burden-shifting framework. "The elements of a [TCHRA] disability-discrimination claim are that (1) the plaintiff has a disability, (2) the plaintiff was qualified for the job, and (3) the plaintiff suffered an adverse employment decision because of his disability." *Texas Dep't of Transp. v. Lara*, 625 S.W.3d 46, 61 (Tex. 2021).

Johnson argues he produced more than a scintilla of evidence that he was disabled under the TCHRA. Johnson identifies his disability as high blood pressure and contends that if uncontrolled, it impacts the major life activities of working, circulatory system function, and interacting with others. Capstone argues, however,

that the trial court properly granted summary judgment in its favor on Johnson's discrimination claim because Johnson did not produce evidence demonstrating that his high blood pressure substantially limited any of his major life activities.

The TCHRA defines a "disability" as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE § 21.002(6). This definition "includes an impairment that is episodic or in remission that substantially limits a major life activity when active." *Id*. § 21.0021(a)(2). The TCHRA defines "major life activity" as, including, but not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. The term also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id*. § 21.002(11-a).

Federal and state law indicates that determining whether an impairment substantially limits a major life activity is not a demanding standard. *See, e.g.*, 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."); *id.* § 1630.2(j)(1)(iii) ("[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand

extensive analysis."); TEX. LAB. CODE § 21.0021(a)(1) (instructing that the term "disability" "shall be construed in favor of broad coverage. . .to the maximum extent allowed" by applicable statutory provisions). Additionally, the TCHRA requires courts to assess whether an impairment substantially limits a major life activity "without regard to the ameliorative effects of mitigating measures," including medication. TEX. LAB. CODE § 21.0021(b).

In response to Capstone's motion for summary judgment, Johnson presented medical records and deposition testimony showing that he was diagnosed with high blood pressure in 2010, which caused him to suffer from severe headaches and dizziness. Capstone argues that Johnson presented no evidence allowing a reasonable juror to conclude that his high blood pressure substantially limited his major life activities, such as working, maintaining circulatory system function, and/or interacting with others. However, in his deposition, Johnson stated that he was periodically unable to perform essential job functions for Capstone due to the severity of his high blood pressure symptoms (dizziness, headaches).

Regarding his ability to work, Johnson acknowledged that when Capstone hired him, his high blood pressure did not prevent him from performing essential job functions. However, just a few months after being hired, his symptoms worsened, causing him to visit the emergency room on May 15, 2018. According to Johnson, during this visit, he was "diagnosed with high blood pressure high enough to have a

stroke." Medical records show that Johnson was prescribed medication to treat his high blood pressure and was held from work until May 24, 2018. Johnson said that after returning to work, he experienced recurring high blood pressure symptoms and medication side effects that affected his ability to perform daily activities, such as driving and interacting with others. He said that the prescribed medication calmed him to the point of not being able to function, ultimately causing him to miss work.

The summary judgment evidence demonstrates that Johnson contacted Capstone's human resources department after his manager, Javorsky, was allegedly rude and insensitive about him missing work. Johnson informed human resources that he visited the doctor on June 7, 2018, because his medication dosage prevented him from operating warehouse equipment and driving to work. Capstone addressed Johnson's complaint by providing him with three weeks of paid medical leave to ensure his safety and suitability for work. Capstone did not allow Johnson to return to work until July 19, 2018, when it received confirmation from Johnson's physician that he could return to work without any limitations or restrictions.

Considering Johnson's testimony about his high blood pressure and how it affected his ability to drive and operate warehouse machinery—leading to him missing work—along with evidence that Capstone granted Johnson paid medical leave to ensure his safety and suitability for work, we find Johnson presented sufficient evidence to support a finding that he is "disabled" under the TCHRA. *See*

15

TEX. LAB. CODE § 21.0021(a)(1) (instructing that the term "disability" "shall be construed in favor of broad coverage. . .to the maximum extent allowed" by applicable statutory provisions).

To establish his prima facie case of disability discrimination, Johnson was also required to present sufficient evidence to support findings that he was qualified for his position and that a causal connection existed between his high blood pressure and his termination. *See Lara*, 625 S.W.3d at 61. For purposes of this analysis, however, we assume, without deciding, that Johnson carried his burden on the final two elements of his prima facie case of disability discrimination. *See Donaldson*, 495 S.W.3d at 437–38 (declining to resolve question of whether employee established prima facie case of disability discrimination because employer "met its burden of production to articulate a legitimate non-discriminatory reason for its termination decision").

**B.     Legitimate, Non-Discriminatory Reason**

Capstone argues that even if Johnson established a prima facie case of disability discrimination, the trial court properly granted summary judgment because it articulated a legitimate, non-discriminatory reason for Johnson's termination. According to Capstone, the summary judgment evidence indicates "[its] decision to terminate Johnson was based upon excessive absences in August 2018, which was

16

*after* Johnson returned to work from the [Leave of Absence] *without* any restrictions or limitations on ability to perform his job."

As summary judgment evidence, Capstone presented a fit-for-duty release signed by Johnson's physician on July 19, 2018, stating that Johnson could return to work with no limitations or restrictions. Before Johnson returned to work, Boyd informed him, "Since your prior absences were not held against you and you were on an approved [Leave of Absence] and released to come back to work, there shouldn't be any more issues with your attendance at work." Johnson returned to work on or about July 20, 2018. Johnson testified that his medical leave allowed him to adjust to his medication and manage his blood pressure. According to Johnson, when he returned to work, his blood pressure did not hinder his ability to perform essential job functions.

The summary judgment evidence also included Johnson's employment agreement and an employee handbook containing polices related to Johnson's employment, including Capstone's attendance policy. The employment agreement specifies that Johnson's employment is covered by the handbook. In his deposition, Johnson confirmed that he was bound by the handbook's policies because he signed the employment agreement.

Capstone's attendance policy assigns a specific number of disciplinary points to unexcused absences or call-ins, depending on the circumstances of the absence or

17

call in. Disciplinary point accruals relevant to this case are: (1) one-half point for call-in absences; (2) four points for a no-call/no-show for scheduled work; and (3) three points for excessive call-in absences and/or incidents of tardiness, defined as three or more such violations in a four-week period. The attendance policy provides that "[u]pon receiving the fifth (5th) point the Associate will be terminated[.]"

As summary judgment evidence, Capstone presented an affidavit from Beth Shonek, its Senior Director of Human Resources. In her affidavit, Shonek stated that Johnson "incurred the following absences in August 2018: (1) August 6, 2018 - called in to work because his car was shut off; (2) August 13, 2018 - called in to work to meet with an attorney; (3) August 20, 2018 left work early because of a family emergency; and (4) August 21, 2018 failed to show up for scheduled work without calling in (no call/no show violation)." Shonek indicated that Johnson's absences on August 6, 2018, August 13, 2018, and August 21, 2018, resulted in him accruing five disciplinary points. Shonek also indicated that Johnson accrued three disciplinary points for excessive call-in absences and tardiness in a four-week period, bringing his total to eight disciplinary points for August 2018. According to Shonek, "Johnson was terminated for these August 2018 points pursuant to Capstone's attendance policy, which provides that associates are terminated upon receiving the fifth point." In computing Johnson's disciplinary points, Shonek did not include the two days of work that Johnson missed from August 1 to August 3,

18

2018, due to the passing of his mother, or Johnson's absences before his medical leave, between May 2018 and June 2018. Johnson acknowledged in his deposition that he missed work in August 2018 for reasons unrelated to his alleged disability.

Accordingly, we conclude Capstone articulated a legitimate non-discriminatory reason for terminating Johnson—excessive absences. *See Troutman v. Time Warner Cable Texas*, L.L.C., 756 F. App'x 421, 428 (5th Cir. 2018) ("[A]s should go without saying, an employee's failure to show up for work is a legitimate reason for firing her.") (per curiam); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) ("[The employer's] stated reason for [the employee's] termination—absenteeism—is a legitimate nondiscriminatory reason for its decision."); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 335 (5th Cir. 2005) (finding that "a lengthy history of attendance problems" constitutes "a legitimate, nondiscriminatory reason for firing" an employee).

## C.    Pretext or Motivating Factor

Because Capstone articulated a non-discriminatory reason for terminating Johnson, the burden shifted back to Johnson to demonstrate that Capstone's stated reason—excessive absences—was a pretext for discrimination. Johnson carries his burden "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (citation omitted). "An

19

explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). For instance, "inconsistent explanations for an employment decision cast doubt on the truthfulness of those explanations." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (citations omitted).

As he did in the trial court, Johnson presents several arguments suggesting Capstone's reliance on his work absences was merely a pretext for discrimination. First, Johnson claims that Capstone's attendance policy did not apply to him because he was a manager. Capstone's attendance policy states that it applies to "warehouse associates and all other non-managerial associates at all sites." Johnson relies on the fact that Javorsky identified him as a "manager" in an email, and that a Capstone corporate representative was uncertain about the meaning of the term "non-managerial associates."

In his deposition, however, Johnson admitted signing an employment agreement with Capstone stating that, "During your employment with our Company, you will be covered by the Associate Handbook, which contains additional guidelines, personnel policies, and benefits related to your employment." Johnson admitted that the policies in the handbook applied to him. Moreover, although Capstone's corporate representative was uncertain about the precise meaning of "non-managerial associates at all sites," he was certain that warehouse supervisors,

like Johnson, fit within that definition. Therefore, Johnson failed to demonstrate that Capstone's enforcement of its attendance policy was a pretext for discrimination.

Next, Johnson claims that Capstone decided to terminate him around the time he requested medical leave, rather than due to his absences in August 2018. However, the record contains no evidence demonstrating Capstone's decision to terminate Johnson was made at the time he requested medical leave. Instead, the evidence demonstrates that, in June 2018, Javorsky contacted human resources about terminating Johnson's employment due to excessive absences. After Johnson provided human resources with documentation indicating he missed work due to recurring high blood pressure symptoms and medication side effects, Boyd informed Javorsky that Capstone could not terminate Johnson for his medical-related absences. Specifically, Boyd stated,

> I have reviewed all the doctor's note[s] that [Johnson] provided and talked it over with our Senior HR Generalist. We agree that in order to air [sic] on the side of caution and not risk being sued, we will suggest [Johnson] take a [Leave of Absence]. [Johnson] has several doctor's note[s] covering about half of his absences and he is claiming that stress from the job is causing some of his health issues. Because of that, we can't just terminate.

Johnson claims that Capstone used the absences that he incurred before taking medical leave in deciding to terminate him. Yet, the summary judgment evidence demonstrates that Boyd assured Johnson that the absences he incurred before taking medical leave would not be held against him when he resumed work. Upon his

21

return, Johnson continued to miss work and leave early, but for reasons unrelated to his high blood pressure. In her affidavit, Shonek stated that Capstone terminated Johnson's employment due to his accumulated disciplinary points in August 2018 for missing work. These absences were unrelated to Johnson's high blood pressure and excluded the days of work he missed in August 2018 due to his mother's passing.

Additionally, Johnson claims that Capstone's failure to adhere to its attendance policy is evidence of pretext. Granted, an employer's failure to adhere to its internal policies when taking adverse employment action against an employee can create an inference of pretext. *See Goudeau*, 793 F.3d at 477; *Tex. Health & Human Servs. v. Sepulveda*, 668 S.W.3d 856, 872 (Tex. App.—El Paso 2023, no pet.). *Dell, Inc. v. Wise*, 424 S.W.3d 100, 111 (Tex. App.—Eastland 2013, no pet.). But the ultimate question here is whether Capstone's failure to follow its internal policies supports an inference that discrimination was a motivating factor in Johnson's termination. *See* TEX. LAB. CODE ANN. § 21.125(a); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 479–80 (Tex. 2001); *Dell*, 424 S.W.3d at 111.

According to Johnson, Capstone deviated from its attendance policy by failing to keep proper documentation. But when an internal policy avoids guarantees and reserves discretion for the employer, a failure to follow the policy does not create an inference of pretext. *See, e.g.*, *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 391 (5th Cir. 2020); *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x

209, 212–13 (5th Cir. 2018) (collecting cases). Here, Capstone's corporate representative stated that Capstone did not require any documentation before terminating an employee. He also stated that managers, like Javorsky, had discretion in enforcing the attendance policy.

Johnson claims that Javorsky started tracking his absences with spreadsheets around the same time he requested medical leave. However, temporal proximity does not, on its own, establish that Capstone's stated reason for terminating Johnson's employment was a mere pretext. *See Garcia v. Pro. Cont. Servs.*, *Inc.*, 938 F.3d 236, 243 (5th Cir. 2019); *Tawil v. Cook Children's Healthcare Sys.*, 582 S.W.3d 669, 684-85 (Tex. App.—Fort Worth 2019, no pet.). Rather, avoiding summary judgment required Johnson to combine the "suspicious timing" of his termination "with other significant evidence of pretext." *Garcia*, 938 F.3d at 243.

Johnson claims that Javorsky did not track the attendance of other employees with spreadsheets. However, Javorsky stated that he did not track other employees' attendance with spreadsheets because it was unnecessary. Johnson failed to demonstrate that there was discriminatory intent behind Javorsky's use of spreadsheets for tracking his attendance. For instance, Johnson failed to provide evidence that other employees in similar positions had excessive absences like him, and Javorsky did not track their attendance using spreadsheets. In an email to human resources, Javorsky suggested that frequent absences made Johnson unqualified for

23

his position. He also noted that Johnson "is great at managing the dock *when he is here*" (emphasis added). Simply put, no evidence indicates that discrimination, rather than poor attendance, was the reason that Javorsky tracked Johnson's attendance differently than other employees in similar positions. *See Dell*, 424 S.W.3d at 111 (recognizing that in some instances, employer's failure to follow its own policies in terminating employee can be evidence of pretext in age discrimination case where employer treated younger similarly situated employees differently); *see also Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 425 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("Summary judgment for the defendant is proper when a plaintiff claiming…discrimination presents only conclusory allegations, improbable inferences, unsupportable speculation, or subjective beliefs and feelings."). We conclude that Johnson failed to carry his burden to establish pretext under the *McDonnell Douglas* framework, and the trial court correctly granted summary judgment as to Johnson's disability discrimination claim. Johnson's first issue is overruled.

## Disability-Based Harassment

In his second issue, Johnson argues that the trial court erred in granting summary judgment as to his disability-based harassment claim. Capstone responds that Johnson failed to present evidence that the complained-of conduct was

sufficiently severe or pervasive to affect a term, condition, or privilege of employment.

To succeed on a claim for disability-based harassment, otherwise referred to as hostile work environment claim,[5] Johnson needed to demonstrate that (1) he belongs to a protected group; (2) he was subjected to unwelcomed harassment; (3) the complained-of harassment was based on his disability; (4) the harassment at issue affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003); *Anderson v. Houston Comm. College Sys.*, 458 S.W.3d 633, 646 (Tex. App.— Houston [1st Dist.] 2015, no pet.). We consider the totality of the circumstances when reviewing a hostile work environment claim, including: "the frequency of the discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Donaldson*, 495 S.W.3d at 445.

To satisfy the fourth element of a hostile work environment claim, Johnson must show that the workplace was "permeated with discriminatory intimidation,

---

[5] These terms are often used interchangeably. *See Equal Emp. Opportunity Comm'n v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *1 n.1 (5th Cir. Jan. 5, 2024) (per curiam) (not designated for publication); *see also LeBlanc v. Lamar State Coll.*, 232 S.W.3d 294, 303 & n.7 (Tex. App.—Beaumont 2007, no pet.) (recognizing "disability-based harassment" claim under TCHRA).

ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment." *Id*. The work environment must be both objectively and subjectively offensive—"one that a reasonable person would find hostile or abusive and one that the victim perceived to be so." *Id*. Incidental or occasional race-based comments, discourtesy, rudeness, or isolated incidents (unless those incidents are "extremely serious") "are not discriminatory changes in the terms and conditions of a worker's employment." *Univ. of Tex. Health Sci. Ctr. at Tyler v. Nawab*, 528 S.W.3d 631, 641 (Tex. App.—Texarkana 2017, pet. denied).

Here, Johnson supported his hostile work environment claim with evidence that, after he returned to work following his emergency room visit in May 2018, his coworkers advised him that a shift lead, Polone, stated that "he planned to do whatever he had to do to make Mr. Johnson's blood pressure go up so high that he'd leave and not return." However, Polone's isolated comment was not severe or pervasive enough to create a hostile work environment. Although Johnson stated that he felt threatened by Polone's comment, Johnson was not present when the comment was made. He mentioned the comment to management only after Javorsky started expressing frustration with his frequent absences, and he presented no evidence that he had other issues with Polone or that the comment interfered with his job performance.

Johnson also claimed that before his medical leave in June 2018, another shift lead, Malveaux, began "yelling," "cursing," and "shouting" at him for leaving a loud work area to speak with a client. During his deposition, Johnson revealed that Malveaux used a racial slur and threatened to beat him up, causing his blood pressure to spike. However, Johnson stated that Malveaux verbally attacked him because Malveaux "didn't understand why I was outside on my phone." Therefore, Johnson failed to produce evidence that the incident involving Malveaux was based on his high blood pressure, rather than his absence from work. *See Gowesky*, 321 F.3d at 509 (a prima facie case of disability-based harassment requires proof that the complained-of harassment was based on the employee's disability).

In addition, Johnson presented no evidence that the incident had an adverse impact on a term, condition, or privilege of his employment. The summary judgment evidence demonstrates that Johnson completed his shift following the incident. It further demonstrates that Capstone granted Johnson medical leave nearly a week after the incident to ensure Johnson's safety and suitability for work. Therefore, even considering the incident involving Malveaux alongside Polone's isolated comment, Johnson failed to demonstrate that his coworkers' actions were objectively severe or pervasive enough to affect a term, condition, or privilege of his employment. *See Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023) ("Mere utterance of an epithet which engenders offensive feelings in an employee does not

sufficiently affect the conditions of employment ...") (quotation omitted); *Alief Indep. Sch. Dist. v. Brantley*, 558 S.W.3d 747, 757–58 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding allegations employee was "falsely accused of disrespectful behavior and mistakes," "called a racial epithet," and "stripped of his duties" were not objectively severe or pervasive enough to affect term, condition, or privilege of employment); *Anderson*, 458 S.W.3d at 647 (considering employee's deposition testimony that supervisor's "conduct did not affect her ability to perform her work or the quality of her work" and that her "suffering from physical symptoms such as headaches and stomachaches during the period that she worked for" supervisor was due to supervisor "being a 'demanding' boss in general," and finding that supervisor's "conduct was not 'severe or pervasive' enough to constitute a hostile work environment").

Johnson claimed that Javorsky created a hostile work environment by making adverse comments and taking adverse actions against him based on his high blood pressure. Johnson complained about rude and insensitive remarks that Javorsky allegedly made about his missing work. For instance, he alleged that during a phone conversation with Javorsky, prior to his medical leave, when he requested two days off work due to his medical issues, Javorsky expressed that he "was tired of dealing with [Johnson's] issues," and "abruptly hung up on [him]." He further alleged that Javorsky tried to have him fired due to his medical absences. However, Johnson

28

presented no evidence that such comments and actions by Javorsky had a negative affect on a term, condition, or privilege of his employment, as they occurred prior to his medical leave.

Additionally, Johnson claimed that Javorsky started excluding him from pre-shift meetings after he returned from medical leave. But even taking these allegations as true, Johnson presented no evidence that Javorsky's decision to exclude him from pre-shift meetings was driven by his high blood pressure or rose to the level of actionable harassment. *See Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) (declining to consider employer's "'facially neutral actions'— such as nitpicking [employee's] work, 'being yelled at for asking a question,' or not being forthright with him concerning his status in the attendance point system— when evaluating the totality of the circumstances for a hostile work environment," because employee presented no evidence beyond speculation that employer's actions were racially motivated); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563–64 (5th Cir. 1998) (finding that supervisor's comments to employee that she "better get well this time," and that he "would no longer tolerate her health problems," "while insensitive and rude, would not be sufficient as a matter of law to state a claim of hostile environment harassment," and noting that "in a workplace, some workers will not get along with one another," and courts should not "elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense"). We

29

conclude that Johnson failed to establish a prima facie case of disability-based harassment, and the trial court correctly granted summary judgment as to this claim. Johnson's second issue is overruled.

## Retaliation

In his third issue, Johnson contends that the trial court erred in rendering summary judgment in favor of Capstone as to his retaliation claim. Capstone responds that the trial court properly granted summary judgment because Johnson failed to establish a prima facie case of retaliation.

### 1. Applicable Law

The TCHRA prohibits an employer from retaliating against its employee for engaging in certain protected activities. TEX. LAB. CODE § 21.055. Examples of such activities include: (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding or hearing. *Id*. In his response to Capstone's summary judgment motion, Johnson points to the following protected activities: (1) requesting time off to treat his disability, and (2) complaining about how he was treated when he requested time off and when he returned.[6]

---

[6] Johnson's lawsuit originally alleged that Capstone retaliated against him by terminating him following his request for reasonable accommodation, for taking medically necessary FMLA leave, and for reporting discrimination and harassment.

30

To establish a prima facie claim of retaliation, a plaintiff must establish that: (1) he participated in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Donaldson*, 495 S.W.3d at 441. If the employee establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory purpose for the adverse employment action. *Chandler*, 376 S.W.3d at 822–23; *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App.—San Antonio 2011, no pet.).

## 2. Analysis

Concerning the protected activity requirement, the Texas Supreme Court has held that the employee's complaints must at least "alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Alamo Heights*, 544 S.W.3d at 786. Though "magic words" are not required to invoke the TCHRA's anti-retaliation provision, complaining only of "harassment," "hostile environment," "discrimination," or "bullying" is insufficient. *Id.* at 786–87. There must be some indication of discrimination on the basis of the protected class. *See id.* at 787 (concluding that plaintiff's description of coworker's behavior as "inappropriate," "offensive," "bullying," "harassment," "embarrassing," "rude," and

31

"intimidating" did not alert employer that plaintiff thought coworker's behavior was based on gender or otherwise amounted to sex-based discrimination). "A vague charge of discrimination will not invoke protection under the statute." *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.), *overruled in part on other grounds by Glassman v. Goodfriend*, 347 S.W.3d 772 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

First, as to Johnson's allegation that his request for time off to treat his high blood pressure is protected activity, even if such a request could constitute protected activity under the TCHRA,[7] nothing about his requests indicates a concern about disability-based harassment or discrimination. Johnson merely advised Javorsky of his condition or symptoms and his inability to work as a result. For example, on June 14, 2018, Johnson sent a text message to Javorsky stating: "Jeff still not feeling good on medicine[.] feeling worse[.] double[d] up on my pills and now can't get out of bed without help to go to the bathroom to throw up[.] room spinning[.] might have to go in to ER if symptoms continue[.]" This type of request, standing alone, does not give Capstone the requisite notice of possible disability discrimination or harassment. *See Lara*, 625 S.W.3d at 60 (considering whether plaintiff's request for

---

[7] In *Texas Department of Transportation v. Lara*, the Texas Supreme Court rejected the lower's courts determination that a request for accommodation could not constitute protected activity under section 21.055 as a matter of law but held that the request must nevertheless "have alerted TxDOT to Lara's belief that disability discrimination was at issue." 625 S.W.3d 46, 60 (Tex. 2021).

disability accommodation constituted protected activity and concluding that where evidence only showed plaintiff was "constantly calling" his superiors, timely filed FMLA and sick-leave paperwork, and discussed possibility of leave without pay in telephone conversation with superiors, plaintiff failed to satisfy protected activity element).

We next consider whether Johnson's June 15, 2018 statement to human resources provided sufficient notice of discrimination to Capstone such that it constituted protected activity. We conclude that it does not. Though Johnson's statement describes Polone's comment, the discussions with Javorsky, and the altercation with Malveaux, nothing about these complaints suggests that Johnson intended to report discrimination or harassment *based on his disability*. As noted above, even in documenting the most serious event—the confrontation with Malveaux—Johnson does not specify anything Malveaux allegedly said to Johnson, only that Malveaux was "yelling," "cursing," and "shouting." Again, complaining of workplace conduct as "inappropriate," "offensive," "bullying," "harassment," "embarrassing," "rude," or "intimidating" without more does not alert an employer that the plaintiff seeks to report actionable discrimination. *Alamo Heights*, 544 S.W.3d at 786–87; *see also Sykes v. Driftwood Hosp. Mgmt., LLC*, No. 01-18-00552-CV, 2019 WL 1246337, at *6 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) (holding that plaintiff's two complaints about harassing behavior

did not constitute protected activity where complaints did not alert employer to concerns of race or age discrimination; plaintiff testified that coworker "*never* even harassed him about his race or age" but harassed him by questioning his qualifications and ability to perform job); *Guajardo v. Univ. of Tex. Med. Branch at Galveston*, No. 01-17-00288-CV, 2018 WL 2049334, at *8–9 (Tex. App.—Houston [1st Dist.] May 3, 2018, no pet.) (mem. op.) (holding that employee's comments in evaluation and internal grievance letter did not constitute protected activity where complaints used words like "discriminated," "retaliated," and "singled out" but did not identify alleged discriminatory conduct at issue).

Because neither Johnson's request for leave nor his statement to human resources contains a sufficient description to alert Capstone to any disability-based harassment or discrimination, we determine that he has failed to demonstrate a protected activity under the TCHRA. *See Alamo Heights*, 544 S.W.3d at 786–87; *Sykes*, 2019 WL 1246337, at *6. Johnson therefore cannot establish a prima facie case of retaliation. *See Chandler*, 376 S.W.3d at 822. Johnson's third issue is overruled.

## Conclusion

We affirm the trial court's grant of Capstone's summary judgment.

Amparo Monique Guerra
Justice

34

Panel consists of Chief Justice Adams and Justice Guerra.[8]

---

[8]      The Honorable April L. Farris, former Justice of this Court, was a member of the Panel when the case was submitted and participated in the original decision of the case. Her term of office expired on August 31, 2024, and she did not participate in the decision on the motion for rehearing. *See* TEX. R. APP. P. 49.3.